United States District Court
Eastern District of New York
--------------------------------------X

ATERY LOPEZ,                                    **MEMORANDUM & ORDER**

          *Plaintiff*,                          17-CV-1504(KAM)

-against-

COMMISSIONER OF SOCIAL SECURITY,
          *Defendant*.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §

1383(c), plaintiff Atery Lopez ("plaintiff"), proceeding *pro se*,

appeals the final decision of defendant Commissioner of Social

Security ("defendant" or the "Commissioner").  The Commissioner

denied plaintiff's application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act (the "Act"),

and plaintiff's application for Supplemental Security Income

("SSI") benefits under Title XVI of the Act, finding that

plaintiff was not disabled from January 1, 2010 through December

29, 2015.  On appeal, plaintiff asserts that she is entitled to

receive both DIB and SSI benefits.

        Presently before the court is defendant's motion for

judgment on the pleadings and plaintiff's response.  For the

reasons set forth below, the Commissioner's motion for judgment

on the pleadings is DENIED, and this matter is remanded for

further proceedings consistent with this order.

## Background

The court adopts the factual and procedural background set forth in the Administrative Transcript, the Administrative Law Judge's December 29, 2015 decision, and the Commissioner's motions for judgment on the pleadings. This Memorandum and Order discusses only those facts relevant to the court's determination as set forth herein.

In July and August of 2013 plaintiff applied, respectively, for DIB under Title II of the Act and for SSI benefits under Title XVI of the Act. (Tr. 148-55.)[1] Plaintiff alleged that the onset date of her disability was January 1, 2010. (Tr. 150; *see also* Tr. 29.) According to Disability Determination Explanations dated November 13, 2013, plaintiff alleged disability due to "major migraine, major depression, [and] anxiety." (Tr. 58, 66.) The Social Security Administration ("SSA") denied plaintiff's applications on November 13, 2013. (Tr. 29, *see also* Tr. 56-73 (disability determination transmittals and explanations).)

On November 20, 2013, plaintiff filed a written request for a hearing. (Tr. 29.) Plaintiff appeared and testified with the assistance of a Spanish language interpreter at the hearing, which took place before Administrative Law Judge

---

[1]     Citations to the administrative record are indicated by the abbreviation "Tr."

2

("ALJ") Lori Romeo on October 7, 2015. (Tr. 29; *see also* Tr. 37-55 (transcript of hearing).)   Although plaintiff was informed of her right to representation, she chose to appear and testify without counsel or other representation (Tr. 29), and the record contains plaintiff's executed waiver of her right to representation. (Tr. 147.)   The waiver is written in English, but indicates that it was translated for plaintiff by an individual identified as "S. Rassione" of the Office of Disability Adjudication and Review. (*Id.*)

On December 29, 2015, the ALJ issued a decision (the "ALJ Decision") denying plaintiff's claims for DIB and SSI benefits in their entirety. (Tr. 26-36.)   The ALJ determined that plaintiff had "engaged in substantial gainful activity since January 2003," and that there had been "no continuous 12-month period during which [plaintiff] ha[d] not engaged in substantial gainful activity." (Tr. 31-32.)

Plaintiff appealed the ALJ Decision to the Appeals Council on January 11, 2016, asserting that her "mental health services were not taken into . . . account" in the ALJ Decision. (Tr. 16.)   In support of her appeal, plaintiff submitted mental health records from 2016. (Tr. 2; *see also* Tr. 7-13 (records).) The Appeals Council denied plaintiff's request for review on February 23, 2017, making the ALJ Decision the final decision of the Commissioner. (Tr. 1-6.)

Plaintiff commenced the instant action on March 10,
2017. (Complaint, ECF No. 1.) The Commissioner served her
motion for judgment on the pleadings on October 4, 2017, (Letter
Enclosing Motion, ECF No. 11), but plaintiff initially did not
serve or file any response. (*See* Letter to Court, ECF No. 15.).
The Commissioner filed her papers with the court on December 21,
2017. (*See* Notice of Motion, ECF No. 12; Defendant's Memorandum
of Law ("Def. Mem."), ECF No. 13.) The court directed plaintiff
to file a response if she wished to maintain the instant action
(*see* February 27, 2018 Docket Order), and plaintiff filed an
opposition on March 14, 2018. (ECF No. 16.)

## Legal Standards

### I.   The Substantial Evidence Standard

"Any individual, after any final decision of the
Commissioner of Social Security made after a hearing to which he
[or she] was a party . . . may obtain a review of such decision
by a civil action" in a district court. 42 U.S.C. § 405(g).
When a district court conducts such a review, it may "enter,
upon the pleadings and transcript of the record, a judgment
affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing." *Id.*

"A district court may set aside the Commissioner's
determination that a claimant is not disabled only if the

factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *accord* 42 U.S.C. § 405(g). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." *Burgess,* 537 F.3d at 127-28 (quotation marks omitted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). The district court must "consider[] the whole record . . . because an analysis of the substantiality of evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings are conclusive and must be upheld, *see* 42 U.S.C. § 405(g), and "the [reviewing] court may not substitute its own judgment for that of the [ALJ], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Sec'y of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir. 1984)).

## II.  Insured Status and Five-Step Disability Evaluation

To qualify for DIB and/or SSI, an individual must be disabled.  42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1).  An individual

is disabled under the Act when he or she is not able "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last" for at least twelve continuous months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment, or impairments, must be "of such severity that [the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). To be eligible for DIB an individual must also have been insured within the meaning of 42 U.S.C. § 414 at the time he or she became disabled. 42 U.S.C. § 423(a)(1)(A); *see also* 42 U.S.C. §§ 423(c)(1) and 414(a)-(b) (defining insured status).

## A. The Five-Step Sequential Analysis

To determine whether a claimant is disabled, the SSA follows a five-step sequential analysis, as detailed below. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### i. *Step One*

At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, then his or

her claim will be denied "regardless of [the claimant's] medical condition or [his or her] age, education, and work experience." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantial gainful employment, the Commissioner will proceed to step two.

### ii. Step Two

At step two, the Commissioner determines whether the claimant has a "severe medically determinable physical or mental impairment" or a "combination of impairments that is severe and meets [the SSA's] duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," 20 CFR §§ 404.1521, 416.921, and must "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R §§ 404.1522(a), 416.922(a).

In determining whether a claimant's physical or mental impairments are of "sufficient medical severity," the Commissioner "will consider the combined effect of all [the claimant's] impairments without regard to whether any [particular] impairment . . . would be of sufficient severity." 20 C.F.R. §§ 404.1523(c), 416.923(c). In assessing severity, however, the Commissioner will not consider the claimant's age,

7

education, or work experience.  20 C.F.R. §§ 416.920(c), 404.1520(c).

If the Commissioner determines that the claimant has at least one medically determinable and severe impairment, the Commissioner will proceed to step three.

### iii. *Step Three*

At step three, the Commissioner determines whether the claimant's impairment meets or equals an impairment or impairments found in the "Listing of Impairments" contained in appendix 1 of 20 C.F.R. part 404, subpart P and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the Commissioner determines that the claimant's impairment meets or equals a "listed" impairment, and satisfies the duration requirement, then the Commissioner will find the claimant to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Alternatively, if Commissioner finds that the claimant's impairment does not meet or equal a listed impairment at step three, the Commissioner will assess the claimant's residual functional capacity ("RFC").[2]  20 C.F.R. §§ 404.1520(e),

---

[2]     The Commissioner's RFC analysis takes place prior to step four.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before [the Commissioner] goes from step three to step four, [the Commissioner] assess[es] [the claimant's] residual functional capacity.").  Regardless of whether it is discussed as part of step three, part of step four, or an intermediate quasi-step, the RFC analysis must come after a determination that the plaintiff has a severe

416.920(e).  A claimant's RFC is the most he or she can do in a work setting despite the limitations imposed by his or her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The Commissioner determines RFC by considering "all the relevant medical and other evidence" in the record.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must consider all of the claimant's impairments, including those that are not "severe."  20 C.F.R. §§ 404.1545(e), 416.945(e).

### iv.  Step Four

At step four, the Commissioner must determine whether the claimant's RFC permits the claimant to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  If the claimant can perform his or her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant cannot perform his or her past relevant work, the Commissioner will move to step five.

---

impairment that does not meet or equal a listed impairment at step three and before a determination as to whether the claimant can perform past relevant work at step four.  *See id.*; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii)-(iv), 416.920(a)(4)(iii)-(iv).

### v. Step Five

In the fifth and final step of the sequential analysis, the Commissioner determines whether the claimant can perform "alternative occupations available in the national economy" in light of his or her RFC and vocational factors of age, education, and work experience. *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) (quoting *Dixon v. Heckler*, 785 F.2d 1102, 1103 (2d Cir. 1986)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can transition to other work that "exist[s] in significant numbers in the national economy," the claimant is not disabled; if the claimant cannot transition, the Commissioner must find the claimant disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1), 404.1560(c), 416.960(c).

### vi. Burden of Proof

The claimant must prove his or her case at steps one through four and "has the general burden of proving that he or she has a disability within the meaning of the Act." *Burgess*, 537 F.3d at 128 (citations omitted). At the fifth step, the burden shifts to the Commissioner to show that in light of the claimant's RFC, age, education, and work experience, he or she is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

At step five, the Commissioner need not provide additional evidence about the claimant's RFC, and need only show that there is work in the national economy that the claimant can do. 20 C.F.R. §§ 404.1560(c)(2), 419.960(c)(2); *accord Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

### B.   The ALJ's Duty to Develop the Record

Because benefits proceedings are non-adversarial in nature, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (quoting *Tejada*, 167 F.3d at 774); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." (citation omitted)).

Therefore, even though the court will afford the ALJ's determination substantial deference, a remand for further findings may be appropriate where the ALJ does not fulfill his or her affirmative obligation to develop the record. *See Butts v. Barnhart,* 388 F.3d 377, 386 (2d Cir. 2004) ("[I]n cases where the ALJ fail[s] to develop the record sufficiently to make appropriate disability determinations, a remand for further findings that would so plainly help to assure the proper

disposition of the claim is particularly appropriate." (internal quotation marks and citation omitted)); *see also Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755-57 (2d Cir. 1982) (noting that, in deciding whether substantial evidence supports the Commissioner's findings, courts must first ensure that claimant has a full, fair, and adequate hearing and that all relevant facts are developed).

The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs. *Batista v. Barnhart,* 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (citing *Echevarria*, 685 F.2d at 755, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999), and *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *accord Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009).

## Discussion

### I. The ALJ Decision

In the ALJ Decision, the ALJ concluded that, as of the date of the decision, plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (Tr. 31.) The ALJ then found that plaintiff had engaged in substantial gainful activity since January 2003. (*Id.*)

In making this finding, the ALJ concluded that plaintiff's "self-employment as a babysitter" both was significant to the operation of a business, specifically

12

plaintiff's one-person business, and that it provided plaintiff substantial income, in each case within the meaning of Social Security Ruling ("SSR") 83-34, Titles II and XVI: Determining Whether Work is Substantial Gainful Activity – Self-Employed Persons, 1983 WL 31256 (SSA Jan. 1, 1983). (Tr. 31-32.) The ALJ did not cite any basis for the conclusion that plaintiff was, in fact, self-employed as a babysitter. (*See id.*) The ALJ did, however, cite earnings records indicating that plaintiff's annual income after her January 1, 2010 alleged onset date was comparable to her annual income prior to that date. (Tr. 32 (citing Tr. 163-165).)

The ALJ also concluded, without citation to supporting evidence in the record, that "there ha[d] been no continuous 12-month period during which [plaintiff] has not engaged in substantial gainful activity." (Tr. 32.) Consequently, the ALJ found plaintiff not disabled at step one, and did not proceed to steps two through five of the five-step sequential analysis. (*See* Tr. 31-32 (setting forth ALJ's findings of fact and conclusions of law).)

## II. Analysis

To determine whether to grant defendant's motion for judgment on the pleadings, the court must evaluate whether substantial evidence supports the ALJ's finding that plaintiff was not disabled at step one of the five-step sequential

evaluation, and whether the ALJ sufficiently developed the record.  As set forth below, the court concludes that further record development is needed, and, consequently, vacates the ALJ Decision and remands this action for further proceedings.

**A.   Substantial Gainful Employment for Self-Employed Claimants**

The ALJ Decision's substantial gainful activity analysis was based on SSR 83-34, which "state[s] the policy regarding whether work performed by self-employed persons is substantial gainful activity (SGA) under the disability provisions of the law."  1983 WL 31256, at *1.  SSR 83-34 provides that a self-employed individual's work activity constitutes substantial gainful activity "if he or she renders services that are significant to the operation of the business and if he or she receives a substantial income from the business."  *Id.* at *2.

"The services of an individual in a one-person business are necessarily 'significant.'"  *Id.*  Further, "[i]n a business involving the services of more than one individual, a sole owner or partner will be found to be rendering significant services if he or she contributes more than half the total time required for management of the business, or renders management services for more than 45 hours a month regardless of the total management time required by the business."  *Id.* at *3.  Finally,

"a self-employed individual will have substantial income from a business if," as relevant here, "the livelihood which he or she derives from the business is comparable to that which he or she had before becoming disabled."  *Id.* at *4.

**B.    Findings and Conclusions Supported by Substantial Evidence**

The administrative transcript contains earnings records for plaintiff, which indicate that plaintiff earned income from self-employment each year from 2003 through 2007, and from 2010 through 2014.  (*See* Tr. 156-57; 166-68.) According to her earnings records, plaintiff also earned income from an employer each year from 2007 through 2009.  (*Id.*)  The court finds that plaintiff's earnings records constitute substantial evidence that plaintiff was self-employed for the period in review from January 1, 2010 through December 29, 2015.

Additionally, the court concludes that plaintiff's earnings records constitute substantial evidence that the income plaintiff derived from her self-employment after her alleged onset date of January 1, 2010 was comparable to her income before the alleged onset date.  To illustrate the basis for this conclusion, plaintiff's earnings records indicate that in 2006, the last full year of self-employment prior to the alleged onset date, plaintiff earned $7,873.00 (Tr. 156, 166-67.)  The earnings records also indicate that plaintiff earned $3,879.00

from self-employment and was paid $4,754.40 by an employer, for total earnings of $8,633.40, in 2007. (Tr. 156, 167.) Following the alleged onset date of January 1, 2010, plaintiff earned $8,362.00 in 2010, $9,265.00 in 2011, $9,816.00 in 2012, $9,174.00 in 2013, and $9,415.00 in 2014, in each case from self-employment. (Tr. 157, 167.)

### C. Other Findings and Conclusions

#### 1. Work "Significant" to Business Operations

The record, however, is much less clear as it relates to the ALJ Decision's finding that "[plaintiff]'s work is 'significant' to the operations of [her] business because she is the only person that provides services for the business." (Tr. 32.) The ALJ Decision does not cite to any evidence in support of the foregoing conclusion. Further, although "the business" to which the ALJ refers is presumably "claimant's self-employment as a babysitter" (Tr. 32), at the October 7, 2015 hearing before the ALJ, plaintiff denied that she ran a babysitting service. (Tr. 49.)[3] Defendant's memorandum of law cites no evidence establishing that plaintiff operated a one-person business (Def. Mem. at 5-7), and on review of the record, the court cannot locate any evidence establishing that plaintiff operated a one-person business.

---

[3]     Plaintiff also denied that she ran a cleaning business. (Tr. 49.)

Instead, the record is unclear as to the nature of plaintiff's self-employment.  Plaintiff's earnings records state only that she derived income from self-employment, and do not elaborate at all regarding the nature of plaintiff's self-employment.  (*See* Tr. 156-57, 166-68.)  Further, plaintiff's completed SSA-3368 Disability Report form indicates that plaintiff worked as a house cleaner for a "housekeeping services" business from January 2008 through December 2012. (Tr. 174; *see also* Def. Mem. at 6 (noting that plaintiff reported performing housekeeping services through 2012).)

The period during which plaintiff reported performing housekeeping services, however, includes years during which plaintiff did not earn any income from self-employment.  (*See* Tr. 156-57 (indicating that all of plaintiff's income in 2008 and 2009 was paid by an employer), 167 (same).)  Thus, the Disability Report entry collapses plaintiff's self-employment and employment by an employer into a single entry.  Moreover, the Disability Report entry does not indicate whether the self-employment portions of plaintiff's work as a house cleaner took place in the context of plaintiff's one-person business.

Additionally, as defendant points out, there is some indication in the transcript of the October 7, 2015 hearing before the ALJ that plaintiff was paid to sit with and assist a friend.  (Def. Mem. at 6 (citing Tr. 47-48).)  Defendant also

asserts, based on the hearing transcript, that plaintiff reported the foregoing income as self-employment to the IRS. (*Id.* (citing Tr. 48).)  The hearing transcript, however, is much more muddled than defendant suggests.

At the October 7, 2015 hearing, plaintiff testified that she

> used to visit a friend of [hers] and . . . would
> help her.  [Plaintiff] would sit with her
> [friend] and [plaintiff] would, like, accompany
> her, but he[r] . . . son gave [plaintiff] some
> papers . . . that [plaintiff] could fill out for
> [plaintiff's] taxes.

(Tr. 47.)

According to plaintiff, the friend's son told plaintiff that by filling out the papers, plaintiff "c[ould] get some money as if [plaintiff] were doing cleaning work."  (*Id.*) The ALJ then asked whether plaintiff "w[as] getting paid to be a companion," and plaintiff responded that her friend's son "would give [plaintiff], like, $50 as a gift."  (*Id.*)  The ALJ sought to clarify whether plaintiff was being given $50 as a gift, or as payment "to be a companion to someone in [the friend's son's] household," and plaintiff responded that the $50 was given "as a gift, but . . . [the friend's son] gave [plaintiff] that paper so that [plaintiff] could fill [it] out and say that . . . [plaintiff] was doing the cleaning in the house."  (Tr. 47-48.)

The following exchange then took place:

Q So you were alleging that you were a cleaning lady to the IRS?

A Yes. I have to tell you the truth because I cannot tell you a lie.

Q Did you think that when you signed your taxes to get your tax refund that that might not be a problem for – was that not a lie? If that's what you're telling me is true now?

A Of course.  That's why I didn't do it.

Q I thought you did do it. I thought you sent it to the IRS.

A I did, but it's not like I got any money, like the rest of the people get money.

Q. How many years –

A. They only – they only gave back $63.

Q So they gave you $63 for filling out this form that you alleged that you filled out improperly?

A Yes.

Q Did you do it more than one year?  In other words, did you fill out this fake form more than – more than one year?

A Well, since I was getting welfare, then I filled those papers out as if I were – were getting welfare.  That I was getting money from welfare.

Q How many years did you falsely report to the IRS that you were working after 2010?  If that's your testimony that you falsely reported it.

A On 11/12/13, but with welfare.

Q So you were getting income, plus you were receiving public assistance?

A No.  The public assistance was – I was getting – the tax person told me that you can fill out those papers even though you get public assistance.

Q If you're working, if you're self-employed. You have reported – you reported to the IRS that you were running your own business.  You've done

that through 2014.  You now would like me to
believe that you weren't running your own
business?

A No.

Q What – so what is the truth?  Were you running
your own business or not?

A No.  I have no business of any sort.

(Tr. 47-48.)

The foregoing exchange leaves largely unresolved the
precise nature of the arrangement between plaintiff on the one
hand, and plaintiff's friend and the friend's son on the other
hand.  Further, even if that arrangement were self-employment,
the exchange leaves unclear the time frame during which the
arrangement was in effect, whether plaintiff undertook the
arrangement in connection with a one-person business, and the
amount of income plaintiff earned from the arrangement.
Additionally, the exchange between plaintiff and the ALJ sheds
little light on the nature and contents of the documents that
plaintiff submitted to the IRS, and those documents are not
before the court.

In sum, the record leaves open a possibility that
plaintiff's self-employment did not occur in the context of a
one-person business, and was instead undertaken with a partner
or in another context.  The ALJ Decision's finding that
plaintiff's self-employment work was "'significant' to the
operations of [a] business," however, was premised entirely on

the ALJ's conclusion that plaintiff engaged in a one-person business.  (Tr. 31-32.)  Consequently, based on the record, the ALJ's finding that plaintiff's work was "significant" to the operations of a business is not supported by substantial evidence.

### 2. *Continuous 12-Month Period Without Substantial Gainful Employment*

Further, the ALJ Decision did not cite any evidence for the proposition that there was no twelve-month period during the period in review (*i.e.*, from January 1, 2010 through December 29, 2015) during which plaintiff did not engage in substantial gainful employment.  Similarly, defendant's memorandum of law asserts that "[t]he ALJ correctly found that . . . there was no continuous 12-month period from the alleged onset date through the ALJ decision where plaintiff did not engage in substantial gainful activity," but cites no record evidence supporting the assertion the ALJ's finding was correct. (Def. Mem. at 5.)

Although, as discussed above, plaintiff's earnings records establish that she earned some income from work each year between 2010 and 2014, the earnings records only report plaintiff's annual income, not her monthly income.  (*See* Tr. 156-57, 166-68.)  Moreover, plaintiff's earnings records were generated in May and October of 2015, and indicate no income in

that year.  (*Id.*)  Thus, plaintiff's earnings records do not
indicate whether there was at least one period of 12 consecutive
months during which she did not engage in any work activity,
whether substantially gainful or not.  For instance, the record
does not indicate if plaintiff's entire 2014 income was earned
in the first half of the year, and if plaintiff earned no income
in the second half of 2014 through October 2015.

### D.   Record Development

The burden is on plaintiff to establish that she has
not engaged in substantial gainful activity during the period
review.  *See Burgess*, 537 F.3d at 128 (citations omitted).
Here, as discussed above, the record is unclear as to
significance of plaintiff's work to her "business," and as to
the existence of a continuous 12-month period without
substantial gainful activity.  Consequently, although the ALJ's
conclusions are not supported by substantial evidence and thus
may not be correct, plaintiff has not met her burden of proof.

The ALJ, however, has an affirmative obligation to
develop the record, and this duty is heightened in the case of
*pro se* claimants.  *Batista,* 326 F. Supp. 2d at 353 (citations
omitted).  Here, the ALJ obtained plaintiff's annual earnings
statements (Tr. 156-57, 166-68), but there is no indication that
the ALJ sought to obtain more granular earnings reports, or any
other records that might shed light on the nature of plaintiff's

self-employment or the existence of a period of 12-continuous months without substantial gainful employment.

Instead, the ALJ Decision is wholly silent as to any efforts made by the ALJ to obtain more information regarding these issues.  Further, although the ALJ questioned plaintiff regarding the nature of her self-employment at the October 7, 2015 hearing, the entire exchange regarding plaintiff's work since the alleged onset date consists of just over two and one-half pages.  As discussed above, in the exchange, the ALJ raises, but leaves unresolved, several important factual questions.  (*See* Tr. 47-49.)

Moreover, nowhere in the exchange did the ALJ ask plaintiff whether she, or a third party, could provide documents or other evidence that would shed light on plaintiff's work activity, or lack thereof, since the alleged onset date.  (*See id.*)  Nor is there any indication elsewhere in the record that the ALJ made any inquiry regarding documents or other evidence that would more clearly indicate the extent and nature of plaintiff's work activity after the amended alleged onset cate.  Consequently, the court concludes that the ALJ did not sufficiently develop the record, and remands this action for further proceedings.

## Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, the ALJ Decision is VACATED, and this action is REMANDED for further proceedings consistent with this order.  On remand, the ALJ shall develop the record regarding the nature and extent of plaintiff's work activity since the alleged onset date.  The ALJ should consider whether a finding that plaintiff has engaged in substantial work activity is appropriate, based on substantial evidence in the record, on grounds other than those articulated in the ALJ Decision.  The ALJ shall discharge her heightened duty to develop the record regarding *pro se* plaintiff's DIB and SSI claims regardless of the basis upon which any finding regarding substantial gainful activity is made.  The Clerk of Court is respectfully directed to serve a copy of this Memorandum and Order on *pro se* plaintiff at her address of record, to note service on the docket, and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
       October 31, 2018

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
